Pedro Valmores OLOTEO and Myrna
Isabel Oloteo, Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 80–7128.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1981.

Decided April 27, 1981.

Michael Ullman, Beverly Hills, Cal., for petitioners.

Allen W. Hausman, Atty., Dept. of Justice, Washington, D.C., for respondent.

Before MERRILL and KENNEDY, Circuit Judges, and HEMPHILL *, District Judge.

HEMPHILL, District Judge:

Petitioners, husband and wife, seek reversal of a final decision of the Board of Immigration Appeals affirming their deportation as ordered by an immigration judge of the United States Immigration and Naturalization Service. The dispositive issue critical to this review is whether this Court interprets the five-year statute of limitations imposed on rescission of adjusted status proceedings by § 246(a) [1] of the Immigration and Nationality Act, 8 U.S.C. § 1256(a) [hereinafter § 246(a)], as erecting a time bar to deportation proceedings against immigrants where the ground for such proceedings is ineligibility at the time permanent resident status was acquired. The court declines to so extend the statute and, accordingly, affirms the decision of the Board.

Petitioners are natives and citizens of the Philippines. Pedro Oloteo was admitted to the United States as a lawful permanent resident in May of 1969 on the basis of his claimed status as an unmarried child of a lawful permanent resident. In April of 1971 petitioner Myrna Oloteo was granted preference status as the wife of Pedro Oloteo (by marriage purportedly consummated subsequent to Pedro's entry) and immigrated to this country as a permanent resident as well. The impetus for these deportation proceedings, commenced more than five years after Myrna Oloteo's entry, was the discovery by the immigration service that the couple had, in fact, been married prior to Pedro Oloteo's immigration, in May of 1969. This factual determination of misrepresentation by petitioners, grounds for deportation under § 241(a)(1) of the Act, 8 U.S.C. 1251(a)(1) because their entry visas were thereby obtained by fraud, *see* § 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19), is not contested in this appeal.[2] What petitioners advance is that these proceedings are barred by the five-year limitation contained in § 246(a). The statute provides in pertinent part:

"If, at any time within five years after the status of a person has been otherwise *adjusted under the provisions of § 1255* or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall *rescind the action taken granting an adjustment of status* to such person and cancelling deportation in the case of such person if that occurred and the persons thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made." (emphasis added)

I

Congress has embraced within the confines of the Immigration and Nationality Act a detailed scheme for the admission and deportation of aliens. *See* 8 U.S.C. 1101 *et seq.* The implementation of this scheme is an exercise left to the wisdom and authority of the political branches of government, which function has long been recognized by the judiciary as largely immune from court control. *Lem Moon Sing v. United States*, 158 U.S. 538, 15 S.Ct. 967, 39 L.Ed. 1082 (1895); *The Chinese Exclusion Case*, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889); *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977).

"At the outset, it is important to underscore the limited scope of judicial inquiry into immigration legislation. This Court has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens.

---

* Honorable Robert W. Hemphill, United States District Judge, District of South Carolina, sitting by designation.

1. *Infra.*

2. Petitioners also refused to testify, before the immigration board and thus did not refute the charges of fraud. The fraud is not contested here.

Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' Our recent decisions have not departed from this long-established rule. Just last Term, for example, the Court had occasion to note that the power over aliens is of a political character and therefore subject only to narrow judicial review.' And we observed recently that in the exercise of this broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" [Citations omitted.] *Fiallo v. Bell*, 430 U.S. at 792, 97 S.Ct. at 1477. It is with this limited scope of inquiry that this Court approaches the dispositive question on appeal.

## II

The Act now provides two procedures by which aliens seeking permanent resident status may attain it. The first is the customary entry procedure whereby an alien outside the United States obtains an immigrant visa in his own country through the United States consular office and immigrates via a port of entry. 8 U.S.C. § 1151, 1154. This well-trodden path for aliens seeking immigrant status in this country was the one taken by petitioners. The second method is the "adjustment in status" procedure.[3] § 245(a) of the Act, 8 U.S.C. 1255(a) provides:

"§ 1255. Adjustment of status of non-immigrant to that of person admitted for permanent residence;

\* \* \* \* \* \*

(a) The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

Thus, the alternative method permits an alien already "admitted or paroled" into the United States to acquire an *adjusted* status to that of a permanent. resident, whereas the more traditional method of entry avails itself largely to those immediate relatives of permanent residents living in a foreign land who obtain not an adjusted, but an original, immigrant status upon entry.[4]

What Congress plainly intended by § 246 of the Act was a procedure whereby the Attorney General may, in his discretion, "bust the rank" of the *adjusted* permanent resident alien and restore him to his original temporary status as an alien "admitted or paroled" into the United States, if it appears to his satisfaction that the alien "was not in fact eligible for such adjustment of status". § 246(a), *supra.* With his permanent adjusted status undone, the alien is left "subject to all provisions of this chapter (Chapter 12: Immigration and Nationality) to the same extent as if the adjustment of status had not been made." *Id.* While deportation, a procedure contained within the provisions of the chapter, may follow the rescission of adjusted status, it is not the same remedy nor is it governed by

**3.** This procedure is conducted in accordance with the regulations appearing at 8 C.F.R. Part 245.

**4.** It appears that the Congressional purpose behind the enactment of the "adjustment in status" procedure of § 1255 was to obviate the hardship of an alien already temporarily located in the United States having to leave the country and immigrate through a port of entry in order to obtain permanent resident status.

See Rep. 2096, 82d Cong., 2d Sess., p. 128, U.S.Code Cong. & Admin.News 1952, p. 1653. While an earlier procedure known as pre-examination had been developed by the service to overcome this hardship on temporarily admitted aliens seeking permanent status, Congressional dissatisfaction with it induced the enactment of § 1255. *Id.; see also* Gordon and Rosenfeld, *Immigration Law and Procedure*, § 7.7a.

the same procedures.[5] And it is altogether clear from the plain language of § 246(a) that the five-year limitation applies only to rescission of the "adjusted" permanent status to which that section addresses itself:

"... at any time within five years after the status of a person has been otherwise *adjusted* under the provisions of section 1255...." (emphasis added).

Petitioners here were not granted permanent resident status by virtue of an adjustment procedure, nor have they been subjected to the "rescission of status" mechanism provided for by § 246(a). The proceedings against Pedro and Myrna Oloteo were, by contrast, deportation proceedings authorized by § 241(a)(1) of the Act, 8 U.S.C. 1251(a)(1), which provides:

"(a) any alien in the United States (including an alien crewman) shall upon the order of the Attorney General, be deported who—(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;"

We need only turn to § 212(a)(19) of the Act, found in Title 8 of the United States Code at § 1182(a)(19) to locate the class of aliens to which petitioners belong and by virtue of which were subjected to the within proceedings:

"(a) except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\*   \*   \*   \*   \*   \*

(19) any alien who seeks to procure, or who has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by wilfully misrepresenting a material fact;"

## III

The foregoing distinction notwithstanding, petitioners contend that the five-year statute of limitations found in § 246(a) was intended by Congress to bar deportation proceedings (whose effect is to rescind permanent resident status) based on ineligibility at the time that status was obtained. If this was indeed Congress' purpose, it was certainly not expressed.

In urging their interpretation of § 246(a) upon us, petitioners have artfully constructed a three-step analysis. Those steps are (1) that Congress intended the five-year limitation on rescission of adjusted status proceedings to apply equally to deportation proceedings against adjusted status aliens where the ground for such action is the alien's ineligibility at the time adjustment of status was granted; and (2) that to afford the benefit of such a limitation on deportation to aliens who acquired permanent resident status through adjustment and not afford this same benefit to immigrating aliens (such as the Oloteos) would constitute a denial of equal protection; and (3) that the remedy for this purported Fifth Amendment violation should be the extension of § 246(a)'s statute of limitation to immigrating aliens as well.

However forcefully petitioners may argue as to what they deem Congress "must have intended", this Court finds the intent plainly, unequivocally and unambiguously expressed in the language of the statute itself.[6] There is nothing in the language of the statute which gives rise to a "legitimate doubt" as to what its true meaning is, *Maun v. United States,* 347 F.2d 970, 976 (9th Cir. 1965), for the terms of the statute are clear and unambiguous. *See Natural Resources Defense Counsel, Inc. v. United States Environmental Protection Agency,* 507 F.2d 905 (9th Cir. 1974). Congress has seen fit to do away with statutes of limitation with

---

5.   Proceedings to rescind an adjustment of status are conducted before an immigration judge in accordance with regulations appearing at 8 C.F.R. Part 246.

6.   This court is mindful of the case of *Zaoutis v. Kiley,* 558 F.2d 1096, 1099 (2d Cir. 1977), in

which Judge Mansfield wrestled with "what Congress meant by the term 'appear to the satisfaction'" of the Attorney General as it appears in § 246(a). That question, however, does not arise in this appeal.

regard to deportation proceedings,[7] but in its wisdom has engrafted such a limit to the rescission of status proceeding alone. This court refuses to meddle in that decision.

In the only published administrative decision we have found which directly addresses § 246(a)'s application beyond the realm of rescission proceedings, the Attorney General read the statute as imposing no bar on exclusion proceedings commenced more than five years after adjustment of status. In so doing he made it clear that his ruling applied to deportation proceedings as well. *Matter of S,* 9 I & N Dec. 548, 553 n.4 (1962). Although we are not bound by his interpretation, the Attorney General's opinion deserves some deference. At least one other court is in accord with our view:

> "In seeking a declaratory judgment that there is a five-year statute of limitations on deportation and that it is applicable to him, plaintiff asks us to grant relief which neither the Service, the Attorney General (*see Matter of S.,* [9 I & NS Dec. 548 (1962)]), nor Congress has been willing to provide. *See* S.Rep. 1515, 81st Cong. 2d Sess., 289 (1950);[4] 38 Cong. Rec. 5159 (1952) (Remarks of Senator Benton); 98 Cong.Rec. 4433–34 (rejection of proposed amendment to the Act to add a five-year statute of limitation for deportable aliens).
>
> "4. 'It is the recommendation of the subcommittee that the time limitation on [an alien's] deportation should be eliminated. If the cause for exclusion existed at the time of entry, it is believed that such aliens are just as undesirable at any subsequent time as they are within the 5 years after entry.'"

*Ubiera v. Bell,* 463 F.Supp. 181, 185, n.4 (S.D.N.Y.1978).

The argument that our interpretation of § 246(a) renders it without practical effect would best be made before Congress and the Attorney General. It cannot be denied that deportation may be instituted more than five years after an adjustment of status has taken place, whereas a rescission proceeding against that same alien is time-barred. As this Court has noted: "A *rescission proceeding* is governed by a five-year statute of limitations. After five years, the alien's *status* is unassailable." (citations omitted and emphasis supplied) *Fulgencio v. Immigration and Naturalization Service,* 573 F.2d 596, 598 (9th Cir. 1978). But a rescission proceeding is not a deportation proceeding, and *vice-versa;* that Congress has chosen to limit rescission proceedings and not deportation proceedings is its prerogative.[8]

Because we are simply unable to adopt the construction of § 246(a) petitioners propose in the initial step of their analysis, this Court need not reach the constitutional question. By limiting the statute to its terms, there can be no question of disparate treatment.

## IV

Under section 212(a)(14), 8 U.S.C. 1182(a)(14), aliens entering the United States for the purpose of performing skilled and unskilled work are excludable unless they have obtained the certification from the Secretary of Labor provided for in that section. Petitioners were also charged with a violation of this section as grounds for deportation. The certificate requirement does not apply, however, to certain preference immigrant aliens, including those who are the spouses, unmarried sons or unmarried daughters of an alien lawfully admitted for permanent residence. The petitioners argued before the Board that section

---

**7.** Gordon and Rosenfeld describe the history of statutes of limitation in immigration law in section 4.6b of their treatise, *Immigration Law and Procedure*:

"In the earliest deportation statutes a one year period of limitation for deportability was fixed. This was increased in later legislation to 3 years and in 1917 the period of limitation generally became 5 years. However the 1952 Act eliminated all statutes of limitations. The result is that there is now no period of limitation restricting the time during which deportation proceedings must be commenced."

**8.** The Government, interestingly enough, noted its belief that "the five-year limitation in § 246(a) is a historical anomaly or the result of an accident in the legislative process."

241(f) of the Act, 8 U.S.C. 1251(f)[9] negates their fraud and misrepresentation in obtaining second-preference immigrant visas as the unmarried son and then, in turn, the spouse of a permanent resident alien. The Board rejected petitioners' contention, held that petitioners failed to establish any basis for entitlement to the exemption, and therefore, found them excludable under section 212(a)(14). As such, they were also deportable. § 241(a)(1).

Petitioners made no challenge to this portion of the Board's ruling in their brief on this appeal. The Service urges it as an independent ground for affirmance. In light of this Court's recent decision in *Cacho v. Immigration and Naturalization Service*, 547 F.2d 1057 (9th Cir. 1976) it would appear that the Board was correct in refusing to apply the waiver provisions of § 241(f) to this additional ground for deporting the Oloteos. In *Cacho* the Court stated:

> "Cacho, however, has been charged also with excludability under § 212(a)(14) because he entered the United States for the purpose of performing labor without a certificate from the Secretary of Labor. The § 241(f) waiver does not reach this ground for exclusion. The basis for exclusion under § 212(a)(14) does not relate to quotas or quota preferences—a legislative ascertainment, as between acceptable aliens, as to which should be admitted—but to the state of the labor market. Entirely different considerations bear on admissibility. The fraud with which he was charged and which was waived by § 241(f) did not operate to accomplish compliance with this subsection. We conclude that the order for deportation of Cacho on this ground must be affirmed."

This Court, similarly, concludes the Board was correct in affirming the Oloteos' deportation on this ground as well.

The decision of the Board of Immigration Appeals stands AFFIRMED.

9. (f) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien *otherwise admissible* at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

KENNEDY, Circuit Judge, concurring in the judgment:

I agree unreservedly with the court's interpretation of the statutes in question. It is not clear, however, that we can avoid the petitioners' argument that the statutes and regulations, as interpreted by the INS and by this court, violate the equal protection component of the due process clause of the fifth amendment. I concur in the judgment because I find the constitutional argument is without merit.