MATTER OF BELENZO

In Deportation Proceedings

A-20040248

*Decided by Board May 6, 1980, December 2, 1980, and May 19, 1981*
*Decided by Attorney General April 28, 1981*

(1) Under section 246(a) of the Immigration and Nationality Act, 8 U.S.C. 1256(a), the Attorney General is directed to rescind the adjustment of status granted an alien if within 5 years it appears to his satisfaction that the alien was not in fact eligible for such adjustment.

(2) In *Matter of S—*, 9 I&N Dec. (BIA 1961, 1962; A.G. 1962), the Attorney General ruled that the 5-year limitation period for rescission of adjustment of status set forth in section 246 of the Act did not preclude subsequent deportation proceedings against adjusted aliens who, before the adjustment was made, committed acts justifying deportation.

(3) For the same reasons set forth in *Matter of S—*, *supra*, the Attorney General now holds that the 5-year rescission limitation does not bar subsequent deportation proceedings even where the alleged grounds for the deportation are acts committed in procuring the adjustment of status.

CHARGES:

Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry

Sec. 212(a)(14) [8 U.S.C. 1182(a)(14)]—No labor certification

Sec. 212(a)(19) [8 U.S.C. 1182(a)(19)]—Visa or other documentation procured by fraud or misrepresentation of a material fact

ON BEHALF OF RESPONDENT:
Pro se

ON BEHALF OF SERVICE:
David Crosland
Acting Commissioner
Gerald S. Hurwitz
Appellate Trial Attorney

BEFORE THE BOARD
(May 6, 1980)

By: Milhollan, Chairman; Maniatis, Maguire, and Farb, Board Members. Concurring Opinion: Appleman, Board Member

This is an appeal by the Service from a decision of the immigration judge ordering that these proceedings be terminated. The appeal will be dismissed.

The respondent is a native and citizen of the Philippines who initially entered the United States as a visitor in August 1971. He last entered the United States in May 1976 as a returning resident alien. He obtained permanent resident status in March 1972, by virtue of his marriage to a United States citizen 2 months after his arrival here. He was therefore exempt from the requirement of an alien labor certification. The respondent, however, concealed from the Service a prior marriage to a native and citizen of the Philippines in 1964, which was never terminated. The respondent stated at the hearing that he still supported his first wife and their four children and wanted to bring them to this country from the Philippines. He further stated that he and his second spouse never lived together as husband and wife and that their marriage was entered into so that he could adjust his immigration status. The marriage ended in divorce in 1973.

Section 246(a) of the Immigration and Nationality Act, as amended, provides in pertinent part:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of Sections 245 or 249 of this Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made.

The immigration judge found that more than 5 years had elapsed since the respondent's status was adjusted under section 245 of the Act, 8 U.S.C. 1255, and that the time in which rescission proceedings could have been brought under section 246 of the Act had expired. In ordering these proceedings terminated, the immigration judge noted that the respondent was last admitted to the United States upon presentation of his alien registration receipt card (Form I-151) and that rescission proceedings under section 246 of the Act have never been instituted against him. The immigration judge further noted that deportation proceedings were not instituted within the 5 year period during which rescission proceedings could have been brought and found that the Service apparently commenced the instant proceedings on the theory that such action is permissible under the Attorney General's decision in *Matter of S—*, 9 I&N Dec. 548 (BIA 1961; A.G. 1962; BIA 1962).[1] The immigration judge concluded that none of the

---

[1] *Matter of S—* involved exclusion proceedings. The alien fraudulently obtained an

deportation charges in the instant case would have been "appropriate prior to the grant of 245 relief" even if the permanent resident status of the respondent could have been voided. A fortiori, he found that if the grant of the respondent's permanent resident status cannot now be rescinded, such charges would not lie.

On appeal, and at oral argument, the Service contended that the mere fact that an alien has had his status adjusted within the United States to that of a lawful permanent resident pursuant to section 245 of the Act does not preclude the subsequent deportation of the alien although his status as a lawful permanent resident was not rescinded nor an action begun within the statutory 5 year period pursuant to section 246 of the Act. In support of its position, the Service cites *Matter of S—, supra*.

Upon review of the record, we adopt the rationale of the immigration judge. We conclude that since the Service cannot now rescind the respondent's adjustment of status solely on eligibility grounds because of the specified time limitation in section 246 of the Act, the qualitative charges stated in the Order to Show Cause, which did not exist independently of the procurement of adjustment, cannot be supported in deportation proceedings. Accordingly, the appeal by the Service will be dismissed.

**ORDER:** The appeal is dismissed.

CONCURRING OPINION:   Irving A. Appleman, Board Member

This respondent obtained an adjustment of status in March 1972, by claiming a fraudulent marriage to a United States citizen at a time when he was already married to someone else. He last entered in 1976 as a returning resident. No rescission proceedings were ever brought under section 246 of the Act to take away the lawful permanent residence acquired in 1972. Instead, on October 31, 1977, an Order to Show Cause was issued, charging him with deportability (1) under section 241(a)(1) of the Immigration and Nationality Act, in that at time of entry in 1976 he did not have the required labor certification (section 212(a)(14)) and (2) under section 241(a)(1) in that at time of entry in 1976 he had obtained documentation by fraud (section

_____

adjustment of status in April 1955, concealing the fact that he had obtained a visa by fraud in 1949. No rescission occurred within 5 years. Instead, the facts came to light when he attempted to reenter the United States in August 1960, as a lawful permanent resident returning after a visit abroad. The Board held that the passing of the 5 years operated as a statute of limitation barring exclusion on any ground which existed prior to the adjustment. Pointing to the legislative history, in remanding the case to the Board, the Attorney General noted that adjustment under section 245 was never intended to confer greater rights than those enjoyed by a permanent resident who gained his status through entry with an immigrant visa.

212(a)(19)). The immigration judge terminated since the respondent's lawful permanent residence had never been revoked. The Service appealed.

The Service appeal is predicated on language in *Matter of S—*, 9 I&N Dec. 548 (BIA 1961; A.G. 1962; BIA 1962), which, it is argued, permits a deportation action notwithstanding the fact that the 5 year rescission period authorized in section 246 has run. As the immigration judge correctly noted in his excellent decision below, we had addressed this issue in *Matter of Saunders*, 16 I&N Dec. 326 (BIA 1977). In that case I took issue, in a separate opinion, with what I regarded as the aberrated reasoning that rescission *must* take place if the 5 years have not yet run, but is not required if the 5 years have run.

The present ruling comes much closer to the position I urged in *Saunders*, and I have no difficulty in concurring. In this case the claimed deportable grounds stem entirely from the "fraud" perpetrated at the time of the adjustment. There are no deportable grounds preceding the adjustment, that have independent existence outside of that "fraudulent" adjustment. So long as the adjustment exists, and is a fact, the alien cannot be deported. In this respect the case differs factually from *Matter of S—*, *supra*, but is the same as *Matter of V—*, 7 I&N Dec. 363 (BIA 1956).

Since the adjustment can no longer be rescinded, and there is no deportable ground preceding the adjustment and independent of it, the proceeding must be terminated.

This is the thrust of the decision, and, while the majority does not labor the point, the majority position in *Saunders* now appears to be overruled.

## BEFORE THE BOARD
(December 2, 1980)

By: Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members

The Service has moved for reconsideration of our decision of May 6, 1980, in which we affirmed a decision of the immigration judge terminating the proceedings, and dismissed the Service appeal.[1] Execution of our order has been deferred pending disposition of the instant motion. The motion to reconsider will be denied.

The respondent procured an adjustment of status by concealing a prior undissolved marriage and entering into an immigration marriage of convenience. While thus illegally adjusted, he entered the

---

[1] *Matter of Belenzo*, Interim Decision 2793 (BIA May 6, 1980).

United States as a returning resident. He is charged with deportability for lack of a labor certification at time of entry, and obtaining entry by fraud.

In our prior order, we concluded that since the Service cannot now rescind the respondent's adjustment of status because of the 5 year time limitation in section 246 of the Immigration and Nationality Act, the qualitative charges stated in the Order to Show Cause cannot be sustained in deportation proceedings since they have no existence independently of the claimed illegal procurment of adjustment.

The Service contends that "both case law and legislative history support the view that an adjustment can be successfully attacked in deportation proceedings" and that section 246 was not meant to be a statute of limitations; that "an adjustee was never intended to gain additional benefits by virtue of his adjustment." The Service has cited *Matter of S—*, 9 I&N Dec. 548 (BIA 1961; A.G. 1962; BIA 1962), as well as *Ubiera v. Bell*, 463 F.Supp. 181 (S.D.N.Y. 1978), *aff'd*, without opinion *Ubiera v. Bell*, 594 F.2d 853 (2 Cir. 1978), as support.

The motion further argues that rescission was originally intended as a summary procedure to take away permanent residence "without all the complex, due process requirements of the deportation proceedings;" that the 5 years can be read as a "simple time limit" in which this "summary" procedure could be used, but that after 5 years, because of greater equities, the alien's status could only be taken away by a deportation proceeding.

We find this reading of the statute unacceptable. The statute says that after rescission, the alien may or may not be deported — *i.e.*, he shall be treated as any other alien.[2] Deportation does not necessarily follow after rescission, *e.g.*— the case may receive nonpriority treatment, the alien may again adjust, etc. If deportation is to occur, another proceeding must be initiated after rescission — *i.e.*, there must be two proceedings instead of the one which the Service argues can take place any time after 5 years. Rather than being "summary" the procedure is more cumbersome. As an argument for the Service's position it must be rejected.

In addition, we note that whatever the 5 year time limit on rescission means for section 245 adjustment, it means the same thing for section 244 (suspension of deportation) and for section 249 (registry). If rescission of adjustment of status under section 245 can be bypassed after the 5 years, then so too can rescission of adjustment under section 249 or section 244. Yet section 246 requires a concurrent resolution of the Congress for withdrawal of a grant of suspension of deportation.

---

[2] Literally, "the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made" (section 246 of the Act).

Obviously, this is a mandate not lightly to be ignored, nor is it consistent with the "summary" vs. "expeditious" argument of the Service.

Such judicial expressions as exist also afford no comfort to the Service position. The courts have been uniformly solicitous to preserve lawful permanent residence, once acquired, from procedurally improper encroachment; *see generally Chew v. Colding*, 344 U.S. 590 (1953); *Waziri v. INS*, 392 F.2d 55 (9 Cir. 1968); *Fulgencio v. INS*, 573 F.2d 596 (9 Cir. 1978). Those courts which have dealt specifically with the 5-year limitation, have tended to view it as an absolute statute of limitations, to be ignored only upon a tolling of its running. *See Quintana v. Holland*, 255 F.2d 161 (3 Cir. 1958); *Singh v. INS*, 456 F.2d 1092 (9 Cir. 1972); *cert. denied*, 409 U.S. 847 (1972); *Zaoutis v. Kiley*, 558 F.2d 1096 (2 Cir. 1977). Nowhere in these cases is there an intimation the Service would have the choice of proceeding alternatively in deportation.

In *Fulgencio v. INS, supra*, the government attempted to urge a somewhat analagous position to that presented here. *Fulgencio* had been granted adjustment of status "conditioned upon the absence of any derogatory information" upon later record checks. The Service subsequently sought to reopen the deportation proceedings when derogatory information developed. Pointing to fundamental unfairness in reopening the deportation case, the court pointed out that rescission was preferable because of its procedural safeguards. The conditional grant in deportation proceedings, according to the court, "undermined the security which ought to attend permanent resident status," whereas "a rescission proceeding is governed by a 5 year statute of limitations." *Id.* at 598. Citing *Quintana v. Holland, supra*, with approval, the court held the conditional grant improper.

It is true that in *Matter of S—, supra*, the Attorney General ruled that an adjusted alien was not intended to be favored over other permanent resident aliens with respect to deportability. In that case the ground of deportation, a fraud at time of original entry, existed *dehors* the adjustment and independently of it. Rescission was not necessary to reach the deportable ground. Both *Matter of S—* and *Ubiera v. Bell, supra*, are consistent with our holding in this case.

This "deportation" proceeding is in effect a rescission proceeding under a different name. The alleged fraud and labor certification violation occurred at the time of adjustment. When perceived as to what it really is, the necessity for compliance with the 5 year limit becomes apparent. The accident of reentry after adjustment, which the motion for reconsideration notes as establishing the deportation charge, does not affect the rule of law involved. It is doubtful that the Service is advocating that the respondent is deportable only because he effected a reentry, and that if he had not done so, he would not be

deportable. Rather, the motion is addressed to all aliens in the respondent's category, and would presumably hold true whether the alien had departed or not, *cf. Francis v. INS*, 532 F.2d 268 (2 Cir. 1976). In any case, we take the same position whether or not reentry is involved. The grounds of deportability arising from the reentry all relate to the claimed illegal procurement of adjustment. This is to mask a rescission proceeding under the guise of a deportation proceeding, and if it is a rescission proceeding it must be initiated within the 5 years.

The motion erroneously states (Tr. p. 5) that the Board has set up an absolute bar to deportation. The bar exists only where deportation is based on an attack on the adjustment itself, as here. If the adjustment is thus attacked, it must be attacked directly, and within the 5 years. If deportation is predicated on something outside the adjustment, there is no bar.

The respondent is presently a lawful permanent resident of the United States and until his lawful permanent residence is revoked or rescinded, he is not deportable. In this respect he differs from the alien in *Matter of S—, supra,* who was deportable, whether or not rescission took place, because of a fraud which was not related to the adjustment. *See also Matter of V—,* 7 I&N Dec. 363 (BIA 1956). We know of no deportation charge in this case which can exist independently of the alleged impropriety in achieving adjustment, nor does the Service allege any. Since the adjustment can no longer be revoked, the motion must be denied.

ORDER: The motion for reconsideration is denied.

## BEFORE THE ATTORNEY GENERAL
### April 28, 1981

Under 8 U.S.C. § 1255, the Attorney General may adjust the status of an alien admitted or paroled into the United States to that of a permanent resident if the alien is eligible to receive a permanent visa and is admissible to the United States for permanent residence. Within 5 years, the Attorney General is authorized to rescind the action granting permanent resident status if the person was not in fact eligible for adjustment to that status. 8 U.S.C. § 1256. In *Matter of S—,* 9 I&N Dec. 548 (1962), the Attorney General ruled that the 5-year limitation period for rescission did not apply to deportation proceedings initiated against adjusted aliens who, before the adjustment was made, committed acts justifying deportation.

In this case, the Board of Immigration Appeals (BIA) ruled that the 5-year limitation nonetheless bars the initiation of deportation

proceedings against an adjusted alien when the alleged grounds for the deportation are acts committed in procuring the adjustment. The BIA certified this case to me for review under 8 C.F.R. 3.1(h)(1)(iii). After review of the record, I disapprove the BIA's decision.

I.

Respondent, a native and citizen of the Philippines, initially entered the United States as a visitor in August 1971. On March 22, 1972, his status was adjusted to that of a permanent resident by virtue of his marriage on October 29, 1971, to a United States citizen. In obtaining the adjustment, respondent concealed from the Immigration and Naturalization Service (INS) his marriage on July 16, 1964, to a native and citizen of the Philippines. Testimony during the proceedings below revealed that respondent's prior marriage was never terminated.[1] Respondent and his second spouse never lived together as husband and wife and their marriage was entered into solely in order for him to obtain permanent status. Respondent's second marriage ended in divorce in 1973.

Respondent last reentered the United States as a returning resident on May 9, 1976, and was admitted upon presenting his alien registration receipt card. On October 31, 1977, the INS issued an Order to Show Cause in deportation against respondent, charging him with deportability on the grounds that, at the time of his entry in 1976, respondent did not have an alien labor certification and had obtained his visa or other documentation by fraud. Rescission proceedings have never been instituted against him.

The immigration judge terminated the proceedings on the ground that the exclusive route for challenging the respondent's conduct in obtaining permanent resident status was a rescission proceeding under 8 U.S.C. § 1256. Since the 5-year limitation period in that provision had elapsed, the judge ruled that the deportation proceedings must be terminated. The BIA dismissed the INS's appeal, adopting the reasoning of the immigration judge. On the INS's motion for reconsideration, the BIA explained that *Matter of S—, supra,* involved a fraud committed at the time of original entry, not in obtaining permanent resident status. That fraud was entirely independent of the adjustment. As the BIA interpreted the relevant statutes, the 5-year limitations period was a bar on an attack on an alien's conduct in procuring the adjustment, even if the proceedings were brought for deportation rather than rescission. According to the BIA, nothing in *Matter of S—* foreclosed this conclusion. The BIA concluded that the current

---

[1] Respondent continues to support his first wife and their four children and wants to bring them from the Philippines to the United States.

proceeding was in effect a rescission proceeding "under a different name" and was thus barred by the 5-year limitations period.

## II.

Analysis of the issue presented in this case must begin with the Attorney General's opinion in *Matter of S—*. In that case the INS sought in 1960 to exclude applicant on the ground that he procured his initial entry into the United States, in 1949, by fraud or wilful misrepresentation of a material fact. In April 1955 the applicant's status had been adjusted to that of a permanent resident. The immigration judge and BIA concluded that exclusion or deportation proceedings based on grounds that would also have supported rescission were indirect attacks on the adjustment of status, and that Congress, in barring rescission of adjustment status after 5 years, also intended to bar indirect attacks on that adjustment.

The Attorney General disagreed. He noted that the exclusion and deportation provisions of the Immigration and Nationality Act, unlike the rescission provisions, contain no statutes of limitations. Congress did not, in his view, intend to give special immunity from deportation to those who acquired permanent resident status. The Attorney General found no "basis for believing that the 5-year limitation ... on the Attorney General's rescission authority has the effect of broadening the benefits conferred by [an] ... adjustment so as to place nonimmigrants who thereby acquire the status of aliens lawfully admitted for permanent residence in a better position than those who have initially entered as permanent residents." *Id.* at 552. *Accord Ubiera v. Bell,* 463 F.Supp. 181, 186[2] (S.D.N.Y. 1978), *aff'd without opinion, Ubiera v. Bell,* 594 F.2d 853 (2d Cir. 1978). On the contrary, he concluded that "the effect of the 5-year limitation on rescission is simply to bar the Attorney General from returning an alien with adjusted status to the category of nonimmigrant." *Id.* at 554. So "narrow" a provision was not "intended to be read as qualifying the express authority provided by the Act to deport or exclude aliens without time limitation." *Id.* at 555.

In a passage of particular relevance to the present matter, the Attorney General recognized that, under his construction, "the time limitation in section 246 ... may be of little practical value to the alien." But as he understood it, the purpose of the limitation was merely to "cut off the availability of a procedure which, although to all intents and purposes would establish deportability, *permitted* the At-

---

[2] In *Ubiera,* the court stated: "The Service ... considers that all aliens, *regardless of how they obtained status or the length of residence here,* are subject to deportation at any time, *Matter of S—, supra,* and the Attorney General's interpretation of Section 246(a) in that proceeding is consistent with the legislative history ...." (Emphasis added).

torney General to act more informally and expeditiously than he could in a deportation proceeding."[3] In the Attorney General's view, the rescission procedures might provide a more informal and expeditious means of correcting mistakes made in granting permanent residence status through adjustment. The Attorney General concluded:

> Congress must have been aware that rescission by returning the alien to nonimmigrant status, in fact, established his deportability on the ground that he had overstayed the period of his admission. The 5-year limitation would thus seem to be a recognition that it would be unfair to permit indefinitely such serious consequences to be effected through a somewhat informal procedure. After 5 years, the Attorney General is, therefore, required to correct mistakes in granting permanent resident status to those initially admitted as nonimmigrants in the same manner as in the case of other aliens, i.e., through deportation.

*Id.* at 555-56 n.8. Under this view of the purpose underlying the 5-year limitations period for rescission, the Attorney General concluded that the limitations period was inapplicable to deportation proceedings, which were governed by different statutory provisions and which, by statute, furnished generous procedural safeguards.[4]

In my view, *Matter of S—* was correctly decided, and the Attorney General's reasoning in that case leads to rejection of the BIA's position here. Under the plain terms of the Act, there is no statute of limitations for deportation and the 5-year period of § 1256 is, by its own terms, applicable only to rescission. The BIA's approach would have the anomolous consequence of favoring those who gained permanent resident status through adjustment over those who initially entered as permanent residents. For these reasons, I believe that the deportation proceeding at issue here is not barred.

I acknowledge that this conclusion, based on the text of the Act, might be avoided if it were plainly inconsistent with the intent underlying the 5-year limitations period. The BIA purported to find such an inconsistency, contending that the period would have no function if it did not insulate the alien from all claims arising from improprieties in the alien's conduct in obtaining permanent resident status. This position, however, was squarely rejected in *Matter of S—*. As the Attorney General there explained, the limitations period is designed to assure that, if no action to obtain rescission is taken within 5 years, the Attorney General may not use the procedural mechanism for rescis-

---

[3] 9 I&N Dec. at 555 n. 8 (emphasis in original). Under INS regulations, the procedures for rescission are generally formal. *See* 8 C.F.R. 246.12(a) and (b). The deportation procedures are, however, imposed by statute, *see* 8 U.S.C. 1252(b), while the rescission procedures lie within the Attorney General's discretion.

[4] The BIA ignored this reasoning here in emphasizing that an alien whose adjustment had been rescinded was nonetheless entitled to deportation procedures before being deported. Rescission automatically establishes grounds for deportation, as the Attorney General explained.

sion, but must instead seek deportation, a route that offers special statutory safeguards to the alien. The underlying purpose of the limitation period for rescission does not, therefore, justify its application to deportation proceedings.

The BIA suggested in this case that *Matter of S—* might be distinguished because the grounds for deportation in that case were entirely separate from the procurement of permanent resident status. Here, by contrast, alleged misconduct in the adjustment is the asserted grounds for deportation. I see no basis, however, for the conclusion that the 5-year limitations period for rescission becomes applicable to deportation proceedings simply because those proceedings are based on conduct in obtaining the adjustment. There is no ground for such a conclusion in the language, history, or structure of the Act, and the proposition advanced by the BIA is certainly not self-evident. I believe that the BIA's distinction is unpersuasive.

The BIA also takes the position that the limitations period is applicable because, in substance, the current proceeding is one for rescission. I disagree. The INS seeks deportation, not rescission. The respondent is entitled to the safeguards accompanying deportation, not those applicable to rescission. To be sure, the allegations on which deportation was sought could also have formed the basis for an action for rescission if the 5-year limitations provision were satisfied. That fact does not, however, alter the fundamental nature of the proceeding. Since this proceeding is one for deportation, the limitations period applicable to rescission is not applicable here.

I conclude that under the terms of the Act, the 5-year limitations period in § 1256 is not applicable to a deportation proceeding, and that nothing in the underlying purposes of the relevant statutes requires a contrary result. Accordingly, I disapprove the BIA's decision, and the case is remanded for further proceedings consistent with this opinion.

## BEFORE THE BOARD
### May 19, 1981
**By: Milhollan, Chairman; Maniatis, and Maguire, Board Members**

Following the Board's denial on December 2, 1980, of a Service motion for reconsideration of our decision of May 6, 1980,[1] in which we affirmed a decision of the immigration judge terminating the proceedings, the Service requested the Attorney General to review and reverse our initial decision. The Attorney General, by order dated April 28, 1981, noted that this proceeding is one for deportation and that the 5-year limitations period applicable to rescission proceedings is not

---

[1] Interim Decision 2793 (BIA 1980).

applicable in this instance. The Attorney General expressed his disapproval of the Board's decision and ordered this case remanded for further proceedings consistent with his opinion. Accordingly, this case will be remanded to the immigration judge for further proceedings consistent with the Attorney General's decision.

ORDER: The case is remanded to the immigration judge for further proceedings consistent with the Attorney General's decision.