# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FELIX ILKECHUKWU ASIKA,

*Petitioner,*

v.

JOHN ASHCROFT, Attorney General,

*Respondent.*

No. 03-1352

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A90-278-797)

Argued: January 20, 2004

Decided: March 29, 2004

Before WILKINS, Chief Judge, and LUTTIG
and TRAXLER, Circuit Judges.

Affirmed by published per curiam opinion.

## COUNSEL

**ARGUED:** Herbert Bradford Glassman, BAACH, ROBINSON &
LEWIS, Washington, D.C., for Petitioner. Linda Sue Wernery, Office
of Immigration Litigation, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Peter D.
Keisler, Assistant Attorney General, Douglas E. Ginsburg, Senior Lit-
igation Counsel, Civil Division, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

**OPINION**

PER CURIAM:

The petitioner, Felix Ilkechukwu Asika, was held to be deportable on July 23, 1998, in an order affirmed by the Board of Immigration Appeals ("the Board") on February 26, 2003. He appeals this decision, arguing that the Attorney General was barred from bringing a *deportation* action against him by the five-year statute of limitations on the *rescission* of wrongfully granted adjustments. *See* 8 U.S.C. § 1256(a). Because we conclude that the Immigration and Naturalization Act is ambiguous on this point, we defer to the interpretation of this provision adopted by the Attorney General. Accordingly, we affirm the Board's judgment.

I.

Felix Asika entered the United States on a nonimmigrant student visa on April 14, 1979, almost twenty-five years ago. On May 27, 1981, at approximately the same time this visa expired, he married Paula Aliniece, an American citizen. That same year, Ms. Aliniece filed a visa petition on his behalf with the Immigration and Naturalization Service (INS), and Asika filed an accompanying application to adjust his status to lawful permanent residence.

The INS had not yet acted on these filings when, six years later, on June 16, 1987, Asika applied for temporary resident status under the 1986 Legalization or Amnesty program. *See* 8 U.S.C. § 1255a. The INS denied this application for lack of supporting documentation on January 21, 1988. And, on February 17, 1988, Asika timely filed an administrative appeal of this denial. Yet, on June 22, 1989, while this administrative appeal was still pending, Asika filed another application with the INS to "adjust" his status of a temporary resident — the status that the INS had recently *denied* to him — to that of a permanent resident. Despite the fact that Asika was not, in fact, a temporary resident at the time he filed this application, the INS granted this adjustment in error and issued a green card to Asika, allowing him to remain permanently in the United States.[1]

---

[1] The INS finally considered and rejected Asika's appeal of its denial of *temporary* resident status in May 1993. In the course of considering

After the passage of six more years, on September 21, 1995, Asika applied for naturalization. As the INS processed Asika's application, it determined that it had erroneously granted Asika's 1989 application for an adjustment to permanent residence status. J.A. 150-51. It also discovered that both the 1981 visa petition filed by Paula Aliniece, Asika's now-estranged wife, and Asika's accompanying application for an adjustment of status, filed fifteen years earlier, were "technically still pending." The INS then attempted to contact Ms. Aliniece in two letters (sent to the address that Aliniece supplied in her 1981 visa petition) to request that she provide evidence in support of a bona fide marriage to Asika. When Aliniece did not respond to these letters, the INS denied both her petition and Asika's accompanying application for an adjustment of status. On May 13, 1997, based, in part, on these denials and, in part, on its determination that Asika had attained permanent residence status in error, the INS concluded that Asika had failed to establish that he had been "*lawfully* admitted for permanent residence," *see* 8 U.S.C. § 1427(a) (emphasis added), and denied his application for naturalization.

The INS instituted removal proceedings against Asika, pursuant to 8 U.S.C. § 1229a(a)(1), on August 19, 1997. It asserted that Asika was deportable because, at the time of the erroneous 1989 adjustment, he was "within" two "classes of aliens inadmissible by the law." J.A. 346; 8 U.S.C. § 1227(a)(1)(A).[2] Asika did not deny that he was within either class of inadmissible aliens at the time of his adjustment; rather,

---

Asika's appeal, the Eastern Service Center of the INS determined that the agency had improperly granted permanent resident status to Asika in 1989 and recommended that this adjustment be rescinded. J.A. 120, 150. However, the Washington District office of the INS declined to accept this invitation based on its conclusion, once again in error, that Asika had been granted permanent resident status as an immediate relative of a United States citizen. J.A. 122, 124, 150.

[2]In particular, the INS asserted that Asika was inadmissible — and therefore deportable — because he filed for an adjustment of status in 1989 (1) for the purpose of performing "skilled or unskilled labor" without a certification from the Secretary of Labor, 8 U.S.C. § 1182(a)(5)(A), and (2) without "a valid, unexpired immigrant visa," 8 U.S.C. § 1181(a). J.A. 324.

he objected that section 246(a) of the Immigration & Naturalization Act ("the Act"), 8 U.S.C. § 1256(a), which he believed to provide a five-year statute of limitations on the *rescission* of adjustments, also foreclosed the INS from *removing* him based on an erroneous adjustment after five years had passed. In an order entered July 23, 1998, an immigration judge ("IJ") rejected Asika's argument and affirmed the Attorney General's longstanding interpretation that section 246(a)'s temporal limitation on the power to *rescind* does not serve to abridge the distinct power to *deport*. *See* J.A. 200 (relying upon *Matter of Belenzo*, 17 I. & N. Dec. 374 (Att'y Gen. 1981)). The IJ also held that Asika did not possess a valid, unexpired immigrant visa when he applied for an adjustment of status in 1989, and, for that reason, was deportable under 8 U.S.C. § 1227(a)(1). J.A. 200; *see also* 8 U.S.C. § 1181(a). The Board of Immigration Appeals affirmed this order without opinion on February 26, 2003, and Asika now petitions the court for review.

## II.

Asika's sole, viable challenge to the Board's affirmance of the order of deportation is that the INS was barred by section 246(a) of the Act from charging him with deportation, eight years after it had adjusted his status to that of a permanent resident.[3] Although, on its own terms, section 246(a) discusses only the rescission of status adjustments and does not purport to limit the Attorney General's power of deportation, Asika argues that its five-year statute of limitations must be applied to deportation proceedings as well, where the INS's only ground for deportation is that the individual's adjustment

---

[3]Asika also argues that the IJ's order of removal was in error because the IJ relied for his determination that Asika was inadmissible at the time of his adjustment on the fact that Asika lacked a valid entry document. Asika contends that under 8 U.S.C. §§ 1255a(4)(A), (b)(1)(C), and (d)(2), this ground for inadmissibility cannot be relied upon to deny "legalization-related" adjustments. We have no jurisdiction to consider this argument, however, because Asika failed to make it before the Board and, therefore, failed to exhaust "all administrative remedies." *See* 8 U.S.C. § 1252(d); *Gallanosa* v. *United States*, 785 F.2d 116, 119 (4th Cir. 1986) (holding that the predecessor statute to section 1252(d) is jurisdictional).

was improperly granted. Following the Third Circuit, Asika contends that the "practical effect" of reading section 246(a) not to apply to deportation in this set of cases would be to "constru[e] it out of existence." *See Bamidele* v. *INS*, 99 F.3d 557, 562-65 (3d Cir. 1996). He also argues the Attorney General's contrary interpretation is not due deference under *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council*, 467 U.S. 837 (1984), both because the statute is clear and because "a statute of limitations is not a matter within the particular expertise of the INS," *see Bamidele*, 99 F.3d at 561.

We disagree. Even accepting that section 246(a) does, in fact, create a five-year statute of limitations on rescission actions, we must defer, under *Chevron*, to the INS's longstanding interpretation of its removal power as being unrestricted by such a statute of limitations, so long as that interpretation is permissible in light of the statutory text and reasonable. We believe that it is and reject Asika's petition.

A.

Section 246(a) provides,

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such a person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to the commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.

8 U.S.C. § 1256(a) (emphasis added).

Both Asika and the Attorney General agree, with uniform support from the case law, that section 246(a) establishes a five-year statute of limitation on the Attorney General's power to rescind erroneously granted adjustments of status. *See*, *e.g.*, *Morales* v. *Yeutter*, 952 F.2d 954, 956 (7th Cir. 1991); *Fulgencio* v. *INS*, 573 F.2d 596, 598 (9th Cir. 1978); *Quintana* v. *Holland*, 255 F.2d 161, 164 (3d Cir. 1958); *see also Matter of S-*, 9 I. & N. 548, 554 (A.G. 1962). Although the plain language of the statute does not lend itself easily to such a reading,[4] the Attorney General understands section 246(a)'s directive that, "the Attorney General *shall rescind* the action taken granting an adjustment of status," not to compel action by the government, but rather, as a term of art, used to provide him and his designees with the "prosecutorial discretion" to rescind an adjustment of status whenever they see fit within the five-year window provided by the statute. *See Matter of Quan*, 12 I. & N. Dec. 487 (BIA 1967) (providing that "the Service may exercise discretion in determining whether rescission proceedings should be instituted in any individual case"). Having interpreted the statute to permit, but not require, him to act within this five-year window, the Attorney General necessarily treats this time limitation as a statute of limitations to forbid rescission actions after its passing. *See Matter of Belenzo*, 17 I. & N. Dec. 374, 380 (Att'y Gen. 1981).

We need not — and do not — consider today, in the absence of any

---

[4]The text of section 246(a) appears to *require* the Attorney General to rescind an adjustment of status if he determines that such an adjustment was erroneous within five years of the agency's decision to grant it. It states, "the Attorney General *shall rescind* the action taken granting an adjustment of status," "if, at any time within five years after" that adjustment, "it shall appear to [his] satisfaction [ ] that the person [who received the adjustment] was not in fact eligible for" it. *See* 8 U.S.C. § 1256(a) (emphasis added). At least on its face, the statutory text does not even address the question of whether the Attorney General has the discretionary power to act to rescind an adjustment *after* the passage of five years.

Were section 246(a) so interpreted, Asika's claim would necessarily fail. If section 246(a) does not create a statute of limitation for even rescission proceedings, there can be no claim that deportation proceedings are so limited by that section.

briefing by the parties, whether the interpretation of section 246(a) adopted by the Attorney General is permissible in the face of the statutory text. We do observe, however, that the Attorney General's permissive interpretation of "shall," on which this interpretation rests, finds parallels in both the immigration and criminal contexts.[5]

B.

Even assuming that section 246(a) establishes a five-year limitation on the Attorney General's power to *rescind* an adjustment, Asika's claim that such a limitation must also extend to the Attorney General's authority to *deport* must still fail.

The Attorney General has held, since 1962, that section 246(a)'s five-year limitation on the rescission of adjustment of status does not apply to deportation proceedings, even when the deportation occurs "on grounds which existed prior to the adjustment and which would also have supported rescission." *See Matter of S—*, 9 I. & N. Dec. 548, 548 (Att'y Gen. 1962). Asika's claim obviously implicates this construction of the Act, which the Attorney General is charged with enforcing. Therefore, we are bound to review the Attorney General's construction under "the principles of deference described in *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984)." *See INS* v. *Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

---

[5]The INS commonly interprets the term, "shall," in the same permissive manner as the Attorney General has in this case, *see* Memorandum from INS Commissioner Doris Meissner to Regional Directors, et al., *Exercising Prosecutorial Discretion*, at 3 (Nov. 17, 2000) (explaining that, "a statute directing that the INS 'shall' remove removable aliens would not be construed by itself to limit prosecutorial discretion"), a practice that has been sanctioned by courts in both the immigration and criminal context. *See*, *e.g.*, *Reno* v. *American-Arab Anti-Discrimination Cmme.*, 525 U.S. 471, 483-84 (1999); *Costa* v. *INS*, 233 F.3d 31, 37 (1st Cir. 2000); *see also Heckler* v. *Chaney*, 470 U.S. 821, 835 (1985) (interpreting the directive in section 334 of the FDCA that violators "shall be imprisoned . . . or fined," to "commit complete discretion to the Secretary to decide how and when" to prosecute under the Act).

i.

Our first task under *Chevron* is to determine whether "Congress has [ ] directly addressed the precise question at issue." *See Chevron*, 467 U.S. at 842-43. We agree with the Third Circuit that it has not. *See Bamidele*, 99 F.3d at 561 (holding that "Congress has given us little guidance" on this question); *but see Oloteo* v. *INS*, 643 F.2d 679, 682-83 (9th Cir. 1981) (holding that the intent of Congress was "plainly, unequivocally and unambiguously" expressed in the Act and that the five-year limitation on the rescission of adjustments *did not* apply to deportation proceedings). The Act does not speak directly to the interplay between the Attorney General's authority to rescind an adjustment of status and his authority to deport, and provides no express guidance whatsoever on the more narrow question of whether the five-year limitation on rescission actions must also apply to deportation actions, in those cases where the same grounds that justify deportation would also support rescission of status. Moreover, to the extent that the language of the Act provides any direction at all, it implicitly supports the Attorney General's position that Congress intended for section 246(a)'s five-year limitation to apply only to the rescission of adjustments. *See id.* Section 246(a) itself gives no indication that its five-year limitation restrains the Attorney General's deportation authority, and the provisions of the Act that govern deportation refer neither to section 246 nor the statute of limitations that it purportedly creates, nor, for that matter, to any time limitation on deportation at all.

In support of his argument that the statute forecloses the position taken by the Attorney General, Asika points to the final sentence of section 246(a), added to the Act as part of a 1996 amendment, which provides,

> Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and *an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.*

8 U.S.C. § 1256(a) (emphasis added). If an order of removal "shall be sufficient to rescind" an adjustment of status, Asika reasons, then the five-year limitation on rescission must also be applied to the Attorney

General's authority to deport, or else the Attorney General would be able to rescind an alien's status through the deportation process, notwithstanding the passage of the five-year statute of limitations on rescission actions. To adopt such a construction, Asika argues, would be, in effect, to "construe [section 246(a)] out of existence." *See Bamidele*, 99 F.3d at 564.

We recognize, as does the Attorney General (at least implicitly),[6] that this inferential argument has some force; however, it is not the *only* way in which the Act may be interpreted to give independent effect to section 246(a). In fact, contrary to Asika's argument — and the Third Circuit's statement in *Bamidele* — section 246(a)'s five-year limitation on rescission actions plays an important, if limited, role, even in the Attorney General's construction of Act. Under the Act, rescission proceedings are subject to few, if any, procedural protections, *see* 8 U.S.C. § 1256; deportation proceedings, in contrast, are subject to extensive procedural regulations set forth in 8 U.S.C. § 1229a. In light of this difference in the two procedures, section 246(a)'s five-year limitation on rescission — even if interpreted to apply only to rescission proceedings — provides an important safeguard to aliens like Asika, who have been in the country for more than five years after their status has been erroneously adjusted, by forcing the Attorney General to establish their deportability through the more rigorous procedures of removal, *see* 8 U.S.C. § 1229a, rather than the less procedurally-onerous process of rescission.[7] *See Matter of S—*, 9 I. & N. at 555 n. 8. Asika is, therefore, wrong to argue that the Attorney General's construction of the statute is not tenable in light of the statutory scheme.

---

[6]In *Matter of S—*, the Attorney General conceded that his construction "of the time limitation in section 246 may be of little practical value to the alien." *See Matter of S—*, 9 I. & N. at 555.

[7]Asika argues that this statutory difference in procedural protections should not figure in our analysis because, in practice, the INS conducts rescission and deportation proceedings in an almost identical fashion. This argument is meritless. The touchstone of the first step under *Chevron* is congressional intent. *See Chevron*, 467 U.S. at 842-43. That the *INS* has chosen *in its discretion* to provide additional procedural protections to aliens in rescission proceedings reveals nothing about whether Congress relied on the *statutory* disparity in procedures for rescission and removal in enacting section 246(a).

When the statute does not speak unambiguously to the precise question at issue, our inquiry under *Chevron* is simply to ask whether the Attorney General's position "is based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 863; *Akindemowo* v. *INS*, 61 F.3d 282, 284 (4th Cir. 1995). Because the Act itself provides little textual guidance as to the interplay between deportation and rescission, and the construction adopted by the Attorney General gives meaning to each of the Act's terms, we hold that it is. *See Chevron*, 467 U.S. at 863 n.11.

ii.

Having so concluded, we are bound by *Chevron* to defer to the Attorney General's construction of the Act so long as it is reasonable.[8] We believe it is. First, as the Attorney General explained in *Matter of S—*, the extension of section 246(a)'s five-year limitation to deportation proceedings would create an apparent anomaly in the Act, limiting to five years the Attorney General's authority to deport those aliens who received lawful permanent residence status through adjust-

---

[8]The Third Circuit agreed that Congress had not spoken clearly to the question at issue in this case, but nevertheless refused to defer to the Attorney General's interpretation of the Act because it believed that the interpretation concerned only a statute of limitations, and "a statute of limitations is not a matter within the particular expertise of the INS." *Bamidele*, 99 F.3d at 561. We disagree. The Attorney General's answer to the question presented in this case — whether section 246(a)'s five-year statute of limitations should also serve to limit the Attorney General's power to deport in those instances where deportation would have the effect of rescinding a previous adjustment of status — does not depend on a straightforward interpretation and application of a statute of limitations; rather, it requires the Attorney General to consider whether a five-year statute of limitations would be consistent with the statutory and regulatory framework for deportation, when applied to a few, but not all, of the cases within that framework. Unlike the Third Circuit, we believe that such a judgment calls upon precisely the sort of agency expertise to which *Chevron* requires the courts to defer. *See Akindemowo*, 61 F.3d at 285 (holding that, "deference to an agency's interpretation is particularly apropos here because the immigration laws 'have produced a complex and highly regulatory program' entailing policy determinations that fall within the ambit of agency expertise.'").

ment, but not those who gained such status upon entering the country. *See Matter of S—*, 9 I. & N. at 554. It is not unreasonable for the Attorney General to read the Act to avoid such disparate treatment of aliens, based solely on the means by which they received permanent resident status.

Second, as explained above, the Act requires the Attorney General to provide aliens charged with deportability greater procedural protections than those faced with the rescission of their status adjustment, even though the rescission of an adjustment serves to establish the alien's deportability by returning him to nonimmigrant status. The Attorney General reasoned from this difference in procedural protections that,

> the five-year limitation [on rescission] would thus seem to be recognition that it would be unfair to permit indefinitely such serious consequences to be effected through a somewhat informal process. After five years, the Attorney General is, therefore, required to correct mistakes in granting permanent resident status to those initially admitted as nonimmigrants in the same manner as in the case of other aliens, i.e., through deportation.

*Matter of S—*, 9 I. & N. at 555 n. 8. As above, we find this explanation to be reasonable. The removal of an alien — even one that is in the United States due to a mistake by the INS — is a serious and disruptive event in that individual's life; the difficulties that such an action cause for the alien are likely to be increasingly severe the longer he has remained in the country. In view of these difficulties, we believe it is entirely reasonable for the Attorney General to interpret the statute to have limited his ability to utilize the less formal rescission process to the five-year period after an alien has received an adjustment, but not to have placed such a limitation on his ability to effect removal proceedings.

## III.

The judgment of the Board of Immigration Appeals, affirming the IJ's order of removal is, accordingly, affirmed.

*AFFIRMED*