

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-1996

# Bamidele v. INS

Precedential or Non-Precedential:

Docket 96-3075

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Bamidele v. INS" (1996). *1996 Decisions.* Paper 22.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/22

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 96-3075


ALADETOHUN O. BAMIDELE,

Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE,

Respondent.


Petition for Review of Board of Immigration Appeals
Order dated November 13, 1995
( Action No. 0313-2: A26 387 101)


Argued September 18, 1996

Before: NYGAARD, ROTH and ROSENN, Circuit Judges

(Opinion Filed November 1, 1996)



John J. Hykel, Esq. (Argued)
34th Floor
1735 Market Street
Mellon Bank Center
Philadelphia, PA 19103

        Attorney for Petitioner


Frank W. Hunger
Assistant Attorney General
Karen Fletcher Torstenson
Assistant Director
Linda S. Wendtland (Argued)
Senior Litigation Counsel

Michael P. Lindemann
Vernon B. Miles
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

                  Attorneys for respondent

                         OPINION OF THE COURT




ROTH, Circuit Judge:

This appeal comes to us from a final order of deportation issued by the Board of Immigration Appeals.  Petitioner Aladetohun Olaniyi Bamidele, a thirty-eight year old native and citizen of Nigeria, asks us to review the decision of the Board ordering him deported because he obtained an adjustment of status pursuant to § 245(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1255(a), through a sham marriage.  Bamidele claims that the Board erred as a matter of law in ordering him deported because the grounds for deportation relate only to his fraudulent adjustment of status.  He contends that Immigration and Naturalization Service ("INS") action to rescind that adjustment is barred by the five year statute of limitation contained in § 246(a) of the Act, 8 U.S.C. § 1256(a).  Because there is no reason to adjust Bamidele's permanent resident status other than the sham marriage which enabled him to obtain permanent resident status under § 246(a) and because adjustment under § 246(a) is now barred, we conclude that Bamidele's permanent resident status cannot presently be rescinded.  As a result, we find that he is not now deportable on the sole grounds of his misconduct in obtaining his adjustment of status.

                              I. Facts

Bamidele has lived and worked in this country for over fourteen years since entering the United States as a non-immigrant visitor on February 19, 1982.  Shortly after arriving in America, Bamidele took up residence in Philadelphia with his brother Larry, who had previously

emigrated to this country.  Bamidele then began his college education, eventually earning a Bachelor of Science degree in Management, and supported himself by driving a cab on nights and weekends. Following his graduation in 1986, Bamidele held a variety of jobs until establishing himself with his current employer in 1990.  In this position of construction inspector and field technician, Bamidele has earned the praise and respect of his employer who has described him as a "very intelligent, dedicated and self-motivated person" and a "very valuable employee."

Bamidele's current troubles with the INS, arise out of his May 19, 1983, marriage to Kim Bonita Griffin, a U.S. citizen.  A year later, on April 10, 1984, on the basis of this marriage, Bamidele applied for and was granted an adjustment of status to that of lawful permanent resident pursuant to § 245(a) of the Act, 8 U.S.C. § 1255(a).  In 1985, however, while participating in a joint FBI/INS investigation of student loan fraud, the FBI inquired into the validity of Bamidele's marriage to Ms. Griffin.  Ms. Griffin told an FBI agent in an interview that her marriage to Bamidele had been a sham and the two had never lived together.  Despite having this information in 1985, the INS took no action for five years.  Bamidele and Griffin were subsequently divorced on June 17, 1988.

On January 31, 1990, the INS finally acted, serving Bamidele with an Order to Show Cause why he should not be deported.  This Order alleged that Bamidele had obtained his "permanent resident status through fraud," thus rendering his "permanent resident status nul [sic] and void." Cert. Admin. Rec. at 39.  The Order further charged Bamidele with violating § 241(a)(2) of the Act in two counts.  The first count charged Bamidele with being in the United States in violation of law under § 241(a)(2) of the Act, while the second count charged Bamidele, also under § 241(a)(2), with committing fraud within the meaning of § 241(c)(2).  A hearing followed at which Bamidele through counsel presented testimony and other evidence that he and Griffin had been in love and intended to make a life together.  Bamidele also argued that he was not deportable under a proper reading of §§ 241(a)(2) and 241(c)(2).  The immigration  judge, stating that he found Bamidele's version of events incredible, ordered him deported on both counts as of October 10, 1991.

Bamidele then embarked on a lengthy appeals process.  Appearing pro se, he first

filed a notice of appeal to the Board of Immigration Appeals in which he reiterated his contentions that his marriage to Griffin was genuine and argued that the immigration judge had erred as a matter of law in his reading of §§ 241(a)(2) and 241(c)(2). When Bamidele failed to file a brief with the Board, it affirmed the immigration judge on all bases in a per curiam opinion dated December 4, 1992. The only arguments on which the Board reached the merits were Bamidele's contention that the second charge was invalid because he did not "reenter" the United States within two years of marriage and his assertion that the Board should not have credited Griffin's testimony. The Board summarily rejected both positions in its two page dismissal of Bamidele's appeal. On March 15, 1993, the Board in a second opinion rejected Bamidele's "Motion to Reconsider" which the Board styled as a "Motion to Reopen" the deportation hearings.

Again represented by counsel, Bamidele filed two petitions for review in this Court which were consolidated for purposes of appeal. In an unreported opinion, we ruled that Bamidele was not deportable under § 241(c)(2) because any fraud by Bamidele, who at all times relevant to this litigation resided in the United States, was committed solely for the purpose of obtaining an adjustment of status and not for the purpose of gaining "entry" to this country. Bamidele v. Immigration and Naturalization Serv., Nos. 93–3098 & 93–3282, 31 F.3d. 1170 (3rd Cir. 1994) (Table). We also remanded for the Board to determine whether Bamidele could be deported solely on the basis of § 241(a)(2) as stated in the first count of the Order. Additionally, although Bamidele raised before us the question of the effect of the statute of limitations applicable to rescission actions under § 246(a) of the Act, 8 U.S.C. § 1256(a), we refused to consider it because we determined that it and several additional issues had not be fully briefed and considered by the Board.

Upon remand, the Board again affirmed the immigration judge's order of deportation pursuant to § 241(a)(2) of the Act. Bamidele v. Immigration and Naturalization Serv., No. A26 387 101 – Philadelphia (B.I.A. Nov. 13, 1995). The Board first took up the question of whether the running of the five year statute of limitations for rescission of adjustment of status in § 246(a) of the Act also precluded the initiation of deportation proceedings. Relying on agency adjudications as precedent, the Board held that the five year limitation in no way impeded deportation proceedings

after the lapse of the period for rescission.  The Board then addressed the question of Bamidele's
deportability under § 241(a)(2) as an alien who is "not presently in possession of a valid immigrant
or valid non-immigrant visa or other valid document" by virtue of having obtained his
documentation through a sham marriage.  On this charge the Board found that Bamidele never
qualified for adjustment of status because he was not an "alien lawfully admitted for permanent
residence." § 245(a) of the Act, 8 U.S.C. 1255(a).

## II.  Jurisdiction

Bamidele has filed a timely appeal for review of a final order of deportation
issued by the Board of Immigration Appeals.  The Board held appellate jurisdiction over this
matter pursuant to 8 C.F.R. § 3.1(b)(2).  Our jurisdiction to review the Board's order is exclusive
and arises under § 106(a) of the Act, 8 U.S.C. § 1105(a).

## III.  Standard of Review

As a preliminary matter we must determine the appropriate standard of review to
apply in examining the Board's interpretation of its governing statute.  The INS asserts that this case
is controlled by Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984), and
its progeny which require us to accord "considerable weight . . . to an executive department's
construction of a statutory scheme it is entrusted to administer . . . ." Id. at 844 (footnote omitted).
Bamidele does not quarrel with the general applicability of Chevron's analysis and concedes as
much in his brief. (See Appellant's Reply Br. at 7-8).

We, of course, also acknowledge the general applicability of Chevron's analysis  to
our review of an agency's interpretations of its governing statutes.  As the Supreme Court has stated,
Chevron divides our analysis into two steps:

> First, always, is the question whether Congress has directly spoken
> to the precise question at issue.  If the intent of Congress is clear, that
> is the end of the matter; for the court, as well as the agency, must give
> effect to the unambiguously expressed intent of Congress.  If,
> however, the court determines Congress has not directly addressed
> the precise question at issue, the court does not simply impose its
> own construction on the statute, as would be necessary in the absence
> of an administrative interpretation.  Rather, if the statute is silent or
> ambiguous with respect to the specific issue, the question for the
> court is whether the agency's answer is based on a permissible

construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted). When, as in this case, Congress has given us little guidance, thereby implicitly delegating the matter, we must yield to an agency interpretation which is a reasonable construction of the statutory provision. Id. at 844. Furthermore, we are especially aware that the INS's interpretations of the statutes it is charged with administering have typically been afforded a great deal of deference. See, e.g., Immigration and Naturalization Service v. Cardoza-Fonseca, 480 U.S. 421, 448 (1987) ("the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program"); Yang v. Maugans, 68 F.3d. 1540, 1546-47 (3rd Cir. 1995) ("The BIA's interpretation of the burden of proof provisions of the INA is entitled to deference under the standards set forth in Chevron."); Fatin v. Immigration and Naturalization Serv., 12 F.3rd 1233, 1239 (3d. Cir. 1993) ("the Board of Immigration Appeals' interpretation of a provision of the Refugee Act is entitled to deference pursuant to the standards set out in Chevron . . . ").

We do not, however, believe this to be the typical case requiring agency deference. Bamidele challenges the Attorney General's construction of the statute of limitations contained in § 246(a) of the Act, which limits actions by the INS to rescind an alien's adjustment of status. A statute of limitations is not a matter within the particular expertise of the INS. Rather, we consider this "a clearly legal issue that courts are better equipped to handle." Dion v. Secretary of Health and Human Serv., 823 F.2d 669, 673 (1st Cir. 1987); see also Lynch v. Lying, 872 F.2d 718, 724 (6th Cir. 1989) ("the amount of weight accorded an agency interpretation diminishes further when the interpretation does not require special knowledge within the agency's field of technical expertise"); In re Oliver M. Elam, Jr., Co., Inc., 771 F.2d 174, 181(6th Cir. 1985) ("When interpretation of the statute does not require special knowledge within the agency's field of technical expertise, reviewing courts sometimes accord little deference to the agency's construction.").

Although the INS cites several cases from this Circuit for the proposition that deference to its views is required, a closer reading reveals that each is inapposite to the question now before the Court. In Yang, 68 F.3rd at 1546-50, we addressed complicated matters such as the allocation of the burden of proof and the elements of the entry test for determining whether an alien

is subject to exclusion proceedings or is entitled to the additional process available in deportation proceedings. Similarly, in Fatin, 12 F.3d. at 1238-1243, we took up the equally daunting question of the meaning of the term "particular social group" for the purpose of determining whether the alien was entitled to withholding of deportation or asylum. Finally, in Katsis v. Immigration and Naturalization Serv., 997 F.2d 1067, 1070-1075 (3rd Cir. 1993), cert. denied, 510 U.S. 1081 (1994), we considered the definition of the phrase "lawfully admitted for permanent residence" as used in the context of § 212(c) of the Act, 8 U.S.C. § 1182(c). Each of these cases concerned matters labyrinthine in their complexity in which our analysis would be bolstered by our reliance on the expertise of the INS. Moreover, the latter two cases addressed terminology which took on unique import and meaning informed by the INS's interpretation of its governing statute.

The instant question, in contrast, evokes none of these considerations. While we recognize § 246(a) as a part of the Act that the INS is charged with administering, a statute of limitations is a general legal concept with which the judiciary can deal at least as competently as can an executive agency. Cf., Love v. Thomas, 858 F.2d 1347, 1352 n.9 (9th Cir. 1988), cert. denied, sub nom., American Fed'n of Labor and Congress of Indus. Orgs., 490 U.S. 1035 (1989) ("While we ordinarily give great weight to the interpretation of the agency charged with enforcement of the statute we are construing, . . . that deference does not extend to the question of judicial review, a matter within the peculiar expertise of the courts."). Thus, in reviewing the INS's interpretation of the statute of limitations applicable to rescission actions we "will not grant it any presumption of special expertise . . . ." United States Dep't of Navy v. Federal Labor Relations Auth., 840 F.2d 1131, 1134 (3rd Cir. 1988).

IV. Discussion

We need only address one of the points Bamidele raises on this appeal. He contends first that the five year statute of limitations in § 246(a) of the Act has run and prevents the INS from initiating rescission proceedings. He further maintains that, in these circumstances, proceedings to rescind the adjustment of status granted him by the INS are a prerequisite to initiating deportation proceedings. Thus, Bamidele concludes the INS erred as a matter of law in ordering him deported under § 241(a)(2) when it was time barred from first rescinding his adjustment of status.

Notwithstanding its concession that the limitations period for a rescission action has run, the INS insists that it properly ordered Bamidele deported under § 241(a)(2). We reject the INS's invitation to effectively read § 246(a) out of existence. Instead we hold, given the novel facts of this case, that rescission proceedings, and by extension the proceedings to deport Bamidele, are time barred.

The Immigration and Nationality Act enacted by Congress in 1952 created a statutory scheme nearly devoid of limitation periods on enforcement actions by the INS. See Lehmann v. United States ex rel Carson, 353 U.S. 685 (1957) (discussing elimination of five year limitation period previously contained in the Immigration Act of February 5, 1917, Pub. L. No. 301, 39 Stat. 874, 889 (1917)); see also Charles Gordon, et al., Immigration Law and Procedure § 71.01[2][c] (1996). One exception, however, appeared in § 246(a), which provided in pertinent part:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

§ 246(a), 8 U.S.C. 1256(a) (1970), amended by 8 U.S.C. § 1256(a) (Supp. 1996). The question of what force this provision possesses lies at the heart of this case.

The INS construes the statute of limitations based on "its belief that 'the five-year limitation in § 246(a) is a historical anomaly or the result of an accident in the legislative process.'" Oloteo v. Immigration and Naturalization Serv., 643 F.2d 679, 683 n.8 (9th Cir. 1981). Thus, the INS argues that, although § 246(a) proscribes an untimely rescission of an alien's status adjustment, it has no effect on the INS's ability to deport that same immigrant on the very same grounds the INS claims render the original adjustment of status improper.

While we are aware of the substantial body of case law which has accumulated at the agency level and in the Ninth Circuit addressing the scope and effect of the § 246(a) limitation period, we nevertheless conclude that the running of the limitation period bars the rescission of Bamidele's permanent resident status and, in the absence of the commission of any other offense, thereby bars initiation of deportation proceedings in this case.

The INS relies heavily on the reasoning expressed in the Attorney General's opinions issued in In re Belenzo, 17 I. & N. Dec. 374, (A.G. 1981), and In re S--, 9 I & N Dec. 548 (A.G. 1962).

In In re S--, the Attorney General took the following narrow view of §§ 245 and 246(a):

[R]escission places an alien in the same position "as if the adjustment of status had not been made"; that is, one whose status was adjusted under section 245 to that of an alien "lawfully admitted for permanent residence" is, through rescission, returned to nonimmigrant status. Consequently the effect of the five-year limitation on rescission is simply to bar the Attorney General from returning an alien with adjusted status to the category of nonimmigrant. . . .

I recognize that as I construe the time limitation in section 246 it may be of little practical value to the alien. While the limitation obviously prevents the Attorney General from returning the alien to the category of a nonimmigrant it could be argued that this entails no real benefit to the alien since the same conduct nevertheless can be utilized independently as a ground for his deportation or exclusion. This makes it difficult to ascertain precisely why Congress enacted the time limitation. But whatever purpose Congress may have intended the time limitation to serve, it is clear that it could not, consistently with the policies underlying the provisions of the adjusted status laws here involved, have intended to confer upon an alien of adjusted status the benefit of immunity from exclusion or deportation for prior conduct.

In re S--, 9 I. & N. Dec. at 553-555.

Even were we to accept the reasoning expressed in the Attorney General's interpretation of the statute, however, we would be compelled to a different result by existing Third Circuit precedent.

In Quintana v. Holland, 255 F.2d 161, 164 (3rd Cir. 1958), we opined:

That which is accomplished by a rescission of status is pretty harsh. It is comparable to the revocation of citizenship about which the courts have been very keen to make sure that the individual received careful protection. The rescission blocks the man on the road to citizenship, and results in banishment from a country where he may have lived a long time, as in this case. We think, therefore, that Congress meant to require the Attorney General to take the described action within five years and to be bound by that limitation itself.

Id. (footnotes omitted). Perhaps we are placing a greater premium on the durability of an alien's adjustment of status than our counterparts in the executive branch, but to do less would "undermine the security which ought to attend permanent resident status." Fulgencio v. Immigration and Naturalization Serv., 573 F.2d 596, 598 (9th Cir. 1978); see also Choe v. Immigration and Naturalization Serv., 11 F.3d at 930 ("Aliens who obtain adjusted status have a legitimate expectation that their immigration will be permanent."). The severity of the delayed onset of deportation proceedings is amply demonstrated here. If the INS were able to push the matter through, Bamidele would have to relinquish his home, contacts with his brother and his friends in the United States, and leave his job to return to Nigeria, a country with which he has had little contact for nearly fifteen years.

In any event, we believe the authorities relied on by the INS are inapposite to the instant case. With the exception of In re Belenzo, 17 I. & N. Dec. 374 (1981), not one of these decisions precisely addresses the question we confront here. That is, none are responsive to the distinction that the sole grounds on which the INS has founded its deportation order are the same as those which the INS claims rendered Bamidele's adjustment of status invalid. It defies logic to say that facts known to the INS within five years of Bamidele's adjustment of status and which would form the basis of a rescission action (had the INS taken timely action) should also empower the INS to deport Bamidele. We find the opinion expressed by the Board in In re Belenzo more persuasive and consistent with the aim of the statute than was the reasoning of the Attorney General. The Board stated, "The bar [to deportation] exists only where deportation is based on an attack on the adjustment itself, as here.

If the adjustment is thus attacked, it must be attacked directly, and within the 5 years. If deportation is predicated on something outside the adjustment, there is no bar." Id. at 380.

Were we not to enforce the statute of limitations in this narrowly defined situation, we, in practical effect, would be construing it out of existence. Our acceptance of the Attorney General's position, would force us to conclude that the only purpose served by the § 246(a) limitation period is to "merely to 'cut off the availability of a procedure which, although to all intents and purposes would establish deportability, permitted the Attorney General to act more informally and expeditiously than he could in a deportation proceeding'." Id. at 382–83 (quoting In re S––, 9 I. & N. Dec. At 555 n.8.) The Attorney General concludes that this reading of the statute flows naturally from the observation that procedural safeguards in deportation actions are established by statute, while in rescission actions Congress implicitly left it to the agency to develop such protections. SeeIn re S––, 9 I. & N. Dec. at 555 n.8. We note, however, that essentially the same procedural measures, including notice and a hearing, are available in both rescission and deportation actions. Compare 8 C.F.R. §§ 246.1 to 246.9, with 8 U.S.C. § 1252(b). To us, the agency's choice to provide this additional process evidences its awareness that the consequences of rescission are comparable in severity to those associated with deportation. Hence, we cannot agree that Congress, presumably knowing that rescission usually places an alien at immediate risk of deportation, would go to the trouble of enacting a statute of limitations on rescission actions, and then intend it to be construed so narrowly that it offered virtually no protection from untimely action by the INS.

## V. Conclusion

We hold that the running of the limitation period contained in § 246(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1256(a), prohibits the INS from initiating deportation proceedings based exclusively on fraud in obtaining the adjustment of status. We express no opinion as to whether the Immigration Marriage Fraud Amendment Act of 1986 (IMFA), Pub. L. 99–639, 100 Stat. 3537 (1986), the Immigration Act of 1990, Pub. L. 101–649, 104 Stat. 4978 (1990), or any other subsequent amendments to the Act would make someone in Bamidele's position deportable. Furthermore, in light of our disposition of the case, we need not reach the issue of whether Bamidele is deportable exclusively under § 241(a)(2).

Thus, we will grant the petition for review, we will vacate the order of the Board of
Immigration Appeals dated November 13, 1995, and we will remand this case to the Board of
Immigration Appeals with instructions to terminate the deportation proceedings.  Each party to bear
its own costs.