**Rosalba Roa GARCIA, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 07–2164.

United States Court of Appeals, Third Circuit.

Argued July 24, 2008.

Filed: Oct. 28, 2008.

William F. Henning, Esq., South Orange, NJ, for Petitioner.

Christopher C. Fuller, Esq., Paul F. Stone, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, FUENTES, and WEIS, Circuit Judges.

### OPINION

WEIS, Circuit Judge.

In this immigration case, the Department of Homeland Security[1] seeks to deport an alien based on misrepresentations she made in applying for an adjustment of

---

1. In 2003, the Immigration and Naturalization Service was abolished and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act, Pub.L. 107–296, 116 Stat. 2135 (2002). We will refer to the agency as the DHS.

status more than five years previously. We conclude that a subsequent amendment to the statute did not negate our earlier precedent that the government was required to rescind and begin deportation within five years. Accordingly, we will grant the petition for review.

Appellant Rosalba Roa Garcia is a native and citizen of the Dominican Republic. In 1996, when she was almost twenty-three years old, Garcia filed a Form I–485 application for adjustment to permanent resident status, asserting she was an unmarried adult child of Dinora Altagracia Landestoy, a United States citizen. At the time she filed the application, Garcia knew that Landestoy was not her biological or legal mother. In September 1996, immigration authorities approved the application and granted Garcia lawful permanent residence status.

Landestoy had filed multiple prior unsuccessful petitions on Garcia's behalf, including one in September 1993 that was approved in January 1994, but then rescinded in August 1995 after an investigation determined that Landestoy was not her mother. The notice of intent to revoke that petition referred to an earlier application that was rescinded in 1988 on the same basis. Landestoy filed another petition in 1995 that was denied in September 1996 because she did not prove that Garcia was her child.

Despite the multiple rejected applications, the DHS did not realize until 2004, when Garcia filed an application for naturalization, that she was ineligible for the adjustment of status she received in 1996. In 2005, the DHS began removal proceedings charging Garcia with being removable under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), because she was inadmissible at time of entry or adjustment of status under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 212(a)(7)(A)(i)(I), as an alien not in possession of a valid immigrant visa or entry document, and under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who attempted to procure a visa, other documentation, or admission into the United States through fraud or willful misrepresentation of a material fact.

An immigration judge ordered Garcia removed on the charged grounds, and the BIA affirmed. She has now petitioned this Court for review. Garcia contends that the five-year limitation in INA § 246(a), 8 U.S.C. § 1256(a), barred the DHS from commencing removal proceedings against her based on her fraudulent 1996 application. She argues that *Bamidele v. Immigration & Naturalization Service*, 99 F.3d 557 (3d Cir.1996), supports her position.

In *Bamidele*, this Court vacated a final order of deportation where an alien had obtained an adjustment of status through a sham marriage. *Id.* at 558. Although it discovered that Bamidele's marriage was a fraud, the DHS waited five years to begin deportation proceedings. *Id.* at 559.

We concluded, "the running of the limitation period bars the rescission of Bamidele's permanent resident status and, in the absence of the commission of any other offense, thereby bars initiation of deportation proceedings in this case." *Id.* at 563. We reasoned further that, "[i]t defies logic to say that facts known to the INS within five years of Bamidele's adjustment of status *and* which would form the basis of a rescission action (had the INS taken timely action) should also empower the INS to deport Bamidele." *Id.* at 564. Allowing deportation in such circumstances would "effectively read § 246(a) out of existence." *Id.* at 562.

When we decided *Bamidele*, § 246(a) read in pertinent part:

"If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made."

8 U.S.C. § 1256(a) (1996), amended by 8 U.S.C. § 1256(a) (Supp.1996).

After this Court decided *Bamidele*, Congress added the following language to the end of § 246(a) as part of an extensive revision of the immigration statute: [2]

"Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 240 [, 8 U.S.C. § 1229a], and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status."

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 § 378(a), Pub.L. No. 104–208, 110 Stat. 3009–546, 649.

■ The BIA held in the case before us that *Bamidele* is not applicable because the amendment to § 246(a) separated rescission and removal proceedings so that the five-year limitation applies only to rescission. According to the BIA, when an

adjustment to permanent lawful resident status is erroneously granted, the DHS has the choice of either instituting rescission proceedings if it catches its mistake within five years or commencing removal proceedings without being subject to any time limitation. In this case, the DHS argues that we should defer to the BIA's interpretation of the amendment rather than follow *Bamidele*.

We decided the matter of deference in *Bamidele*, explaining that § 246(a) is a statute of limitations, a subject that is not "within the particular expertise of the INS." *Bamidele*, 99 F.3d at 561. Therefore, we did not grant the agency's interpretation "any presumption of special expertise." *Id.* (quoting *U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 840 F.2d 1131, 1134 (3d Cir.1988)).

We are bound by precedential opinions of our Court unless they have been reversed by an *en banc* proceeding or have been adversely affected by an opinion of the Supreme Court. *In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir.1998). Because the amendment to § 246(a) is part of the same statute of limitations discussed in *Bamidele*, its holding applies and we will not defer to the agency's construction.

The DHS, however, also maintains that the amendment to § 246(a), has undermined *Bamidele*. In *Bamidele*, after analyzing the statutory language, we decided that the five-year limitation applied to both rescission and deportation actions that were taken to invalidate an adjustment of status that was erroneously granted to an ineligible alien. *Bamidele*, 99 F.3d at 563. The issue before us now is whether the statutory amendment that became effec-

---

2. *Bamidele* was decided on November 1, 1996. The amendment to § 1256(a) was enacted before that date, on Sept. 30, 1996, as § 378 of the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546, –649, which had an effective date of April 1, 1997.

tive post-*Bamidele* altered the primary holding in that case.

Our first step is to scrutinize the text of the amendment. It has two clear provisions:

(1) The Attorney General may remove an alien without taking steps to rescind an adjustment of status; and

(2) An order of removal by an immigration judge is sufficient to rescind the alien's status.

It is significant that the amendment does not invalidate nor modify nor refer in any respect to the statutory language "within five years" after the adjustment. The five-year text remains in the statute. Although the DHS would limit its application to rescission only, removing any statute of limitations to removal under § 1256, we find no justification for such a restrictive application of the plain language of the statute.

The DHS argument is a repetition of what we rejected in *Bamidele*. We observed that the statute of limitations bar on deportation is narrow and quoted approvingly the BIA opinion *In re Belenzo*, 17 I. & N. Dec. 374 (1981), where the Board said that § 246(a)'s prohibition is effective "only where deportation is based on an attack on the adjustment itself." *Bamidele*, 99 F.3d at 564 (quoting *Belenzo*,

17 I. & N. Dec. at 380). Nothing in the amendment to § 246(a) undermines *Bamidele*'s reasoning on that point.

The amendment still contemplates relief from deportation. If this result is anomalous, as the DHS appears to believe, Congress created the anomaly and is free to eliminate it.[3]

We are aware of *Asika v. Ashcroft*, 362 F.3d 264, 267 (4th Cir.2004), a post-amendment case that disagreed with *Bamidele* and deferred to the DHS's interpretation of § 246(a). Respectfully, we cannot agree with our esteemed colleagues on the deference issue.[4]

We conclude that *Bamidele* retains its precedential authority and counsels us to grant the petition for review.[5]

## II.

■ The government also argues that pursuant to INA § 242(g), 8 U.S.C. § 1252(g), this Court lacks jurisdiction to entertain this action. Section 242(g) provides, "Except as provided in this section … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). The government argues that this section applies to bar ju-

**3.** The five-year limitation in § 246(a) is not of recent vintage. Decades ago, in *Quintana v. Holland*, 255 F.2d 161 (3d Cir.1958), a case involving a predecessor statute, we observed that rescission of status was "pretty harsh" and Congress meant to require the Attorney General to take the required action within five years. *Id.* at 164.

**4.** In *Bamidele*, we also recognized our disagreement with a line of cases in the Ninth Circuit. *Bamidele v. INS*, 99 F.3d 557, 563, 563 n. 8 (3d Cir.1996). The amendment to § 246(a) has not changed our view of those cases.

**5.** At oral argument, the government argued that its position is supported by some language in one of our nonprecedential opinions. We are not bound by our nonprecedential opinions. *See United States v. Corley*, 500 F.3d 210, 226 (3d Cir.2007); *see also* Third Circuit Internal Operating Procedure 5.7 (indicating that non-precedential "opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing").

risdiction here because Garcia is raising the five-year limit to challenge the decision to "commence" removal proceedings.

In *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" *Id.* at 482, 119 S.Ct. 936. The Court held that section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.; see also id.* at 483, 119 S.Ct. 936 (Section 1252(g) "performs the function of categorically excluding from *non-final-order* judicial review ... certain specified decisions and actions of the INS." (Emphasis added)).

Despite its apparent broad reach, therefore, § 242(g) "is to be read narrowly and precisely" to prevent review only of the three narrow discretionary decisions or actions referred to in the statute. *Sabhari v. Reno,* 197 F.3d 938, 942 (8th Cir.1999); *see also Fornalik v. Perryman,* 223 F.3d 523, 531 (7th Cir.2000). Thus, the section "has nothing to do with petitions for review of final orders of deportation, or indeed with any sort of review of such orders." *Shah v. Reno,* 184 F.3d 719, 722 (8th Cir.1999).

Garcia is not challenging the discretionary *decision* to commence proceedings, but is challenging the government's very *authority* to commence those proceedings after the limitation period has expired. Thus, § 242(g) is not implicated, and we have jurisdiction to review the BIA's decision as a final order pursuant to § 242(a)(1), 8 U.S.C. § 1252(a)(1).

Accordingly, we will grant Garcia's petition for review, vacate the BIA's decision, and remand for further proceedings.